[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S REVISED COUNTERCLAIM
This case comes to this Court by the plaintiff's motion to strike pursuant to Practice Book Section 152(1) the second count of the defendant's revised counterclaim dated March 18, 1991, for the reason that it fails to state a claim upon which relief can be granted. Both parties filed their memorandum of law as required. Oral argument was had on the CT Page 3943 matter on April 29, 1991 in this court.
This is a foreclosure action in which the plaintiff, the Connecticut National Bank, N.A., claims the foreclosure of a mortgage given by George W. Gager to secure the payment of a note in the original principal amount of $275,000.
The plaintiff claims that the note payments are in arrears and the acceleration provision contained in the note has been claimed. Various other parties have been named as subsequent encumbrancers, but they are not party to the motion to strike.
The defendant George W. Gager (hereinafter referred to as "Gager") has filed an amended counterclaim on March 19, 1991. The essential elements of the counterclaim allege that the plaintiff and the New England Savings Bank granted the loan which is the subject matter of this action in connection with Gager's project known as the Chester Airport in Chester, Connecticut, and further, that the plaintiff and said New England Savings Bank were aware that the only source for the repayment of the loan was proceeds of the sale of individual condominium hangar units at the Chester Airport project. Gager also alleges in the counterclaim that the plaintiff knew that he was insolvent or in default of his obligations to the New England Savings Bank at the time of making the loan, which is the subject of this action, and that he had no other source from which to repay this loan. He alleges further in the counterclaim that the plaintiff agreed "by implication that the plaintiff would take no action to collect this loan or to foreclose the mortgage securing the same but would look only to the proceeds from the Chester Airport project for the satisfaction of its debt." In count two (to which the motion to strike is addressed), Gager alleges that the conduct offends public policy and generally accepted concepts of fairness, is unethical and that all of the acts, actions and omissions constitute unfair acts and practices in violation of the Connecticut Unfair Trade Practices Act. It is the CUTPA claim to which the plaintiff addresses the motion to strike.
Plaintiff, in its memoranda in support of the motion, claims first that CUTPA does not apply to bank transactions and therefore banks are exempt from its enforcement relying on the cases of Russell v. Dean Witter Reynolds, 200 Conn. 174 (1986), and Connelly v. Housing Authority, 213 Conn. 354 (1990). The plaintiff cites the case of Caldor, Inc. v. Heslin, 215 Conn. 590 (1990), for the proposition that it is important to look to the Federal Trade Commission Act (FTCA) in connection with the interpretation of CT Page 3944 CUTPA. In that connection, the plaintiff claims that the FTCA expressly exempts banks from coverage at15 U.S.C. § 45 (a)(2). The plaintiff refers to a certain portion of the legislative history in support of its claim.
The plaintiff does not claim that the factual allegations of the counterclaim are insufficient to support a CUTPA claim if the law were to apply to banks.
The defendant, in their memorandum in opposition to the motion to strike, sets forth the exceptions to CUTPA's coverage under General Statutes Section 42-110c, which provides in part: "(a) Nothing in this chapter shall apply to: (1) transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or the United States. . . ." With regard to the plaintiff's claim that Connelly v. Housing Authority, supra, requires the court to find banks exempt under this language, the defendant says that under Connecticut law, the bank regulator's role must be considered ministerial only citing Financial Federal Savings Bank v. Breen, D.N. 378105, J.D. Hartford-New Britain at Hartford, 1990, (Conn.Sup.Ct., October 29, 1990, Freed, J.).
Both parties acknowledge that the Superior Court decisions are split on the issue of whether or not CUTPA applies to banks with each citing numerous Superior Court decisions.
This Court is persuaded by the thorough analysis of cases such as Economic Development Associates, et al v. City Trust, D.N. 052665, Litchfield County J.D. (Dranginis, J.), in which the court, after a review of the Connecticut state banking laws and regulations, concluded that the same do not constitute "pervasive provisions which establish the rights and responsibilities of banks to their customers," which was relied on in Russell v. Dean Witter Reynolds, supra, or Connelly v. Housing Authority, supra.
Also as noted in the Economic Development Associates case, our legislature could have specifically exempted banks if it had intended banks to be exempt, such as was done by the FTCA.
Under that analysis, the Court here finds that with the proper factual allegations to bring the case within the CUTPA statutes, the defendant Gager has stated a CUTPA claim, and the motion to strike is denied.
Leuba, J. CT Page 3945